UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KIM LEE MILLBROOK,

    Plaintiff

v.

UNITED STATES OF AMERICA,

    Defendant.

CIVIL ACTION NO. 3:12-CV-00421

(MEHALCHICK, M.J.)

# MEMORANDUM

On March 7, 2012, Plaintiff Kim Lee Millbrook initiated this combined *Bivens*[1] and Federal Tort Claims Act ("FTCA") action through the filing of a *pro se* complaint. (Doc. 1). Named as Defendants in the complaint are the United States of America (the "Government") and the following eight employees of the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"): ex-Warden B.A. Bledsoe; Assistant Warden K. Rear; Special Investigative Services Lieutenant James Fosnot; Physician Assistant ("PA") Jon Hemphill; Paramedic Bryan Walls; Counselor M. Edinger; Corrections Officer ("CO") H. Hawk; and a Joh Doe CO. (Doc. 1, at 1-4). In his complaint, Millbrook alleges that all Defendants failed to protect him from a series of physical and sexual assaults while Millbrook was incarcerated in the Special Management Unit ("SMU") at USP Lewisburg, and that Paramedic Walls sexually assaulted

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). "*Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

Millbrook on May 12, 2011, and that CO Frederick was negligent for failing to intervene and stop the May 12, 2011 sexual assault Millbrook suffered at the hands of Walls. (Doc. 1, at 1-4).

After service of the complaint, Defendants jointly filed a motion to dismiss and for summary judgment on April 12, 2013. (Doc. 63). On March 25, 2014, the District Court granted summary judgment in favor of all individual Defendants and in regard to all *Bivens* claims, but permitted the FTCA claim against the Government to continue.[2] (Doc. 88; Doc. 89). Thereafter, the District Court conditionally granted Millbrook's motion for the appointment of counsel (Doc. 115), and Attorney James P. DeAngelo entered his appearance on Millbrook's behalf (Doc. 149). On August 16, 2016, the parties consented to proceed before this Court. (Doc. 144).

A non-jury trial was held on the morning of October 19, 2016. Both parties filed proposed findings of fact and conclusions of law following trial. (Doc. 159; Doc. 160). The key underlying dispute of fact is whether Paramedic Walls intentionally grabbed and pulled Millbrook's genitals on May 12, 2011. The Court, having heard the testimony and reviewed all documentary evidence, now enters the following Findings of Fact, Conclusions of Law and Decision pursuant to Rule 52 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 52(a).

---

[2] The Government is the only proper defendant to an FTCA claim. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).

# **FINDINGS OF FACT**

The Court makes the following findings of fact by a preponderance of the evidence and based upon the areas of agreement in the parties' proposed findings of fact, as well as the testimony and evidence that the Court found credible as presented at trial.

1. Plaintiff Kim Lee Millbrook is an adult male who was incarcerated at USP Lewisburg in Lewisburg, Pennsylvania on May 12, 2011. (Doc. 154, at 4, 15).

2. Paramedic Bryan Walls is an adult male who was employed by the Bureau of Prisons ("BOP") at USP Lewisburg. (Doc. 154, at 25-26; Doc. 159, ¶ 3; Doc. 160, ¶ 4).

3. On May 12, 2011, Millbrook was involved in a physical altercation with his cellmate, inmate Pettus. (Doc. 154, at 4, 6-7; Doc. 159, ¶ 1; Doc. 160, ¶ 3).

4. Several USP Lewisburg staff members, including Paramedic Walls and CO Matthew Frederick, heard the commotion and came to the cell to break up the fight. (Doc. 154, at 7).

5. Millbrook and Pettus were both ordered to submit to restraints and removed from their cell. (Doc. 154, at 7, 29; Doc. 159, ¶ 2; Doc. 160, ¶¶ 3, 5).

6. Pettus and Millbrook were then separated, with Millbrook taken by Paramedic Walls and CO Frederick to the third floor shower area for a medical assessment while Pettus was taken to the first floor shower area. (Doc. 154, at 7-8, 29, 45-46; Doc. 159, ¶ 3; Doc. 160, ¶ 3).

7. During the medical assessment, Millbrook was cuffed and restrained by CO Frederick. (Doc. 154, at 8-9; Doc. 159, ¶ 4; Doc. 160, ¶ 5).

8. Paramedic Walls did not lower Millbrook's boxer shorts then grab and pull down on his penis at any point during the medical assessment on May 12, 2011.

3

9. On May 13, 2011, Millbrook reported to another staff member that Paramedic Walls sexually assaulted him in the third floor shower area the previous day during the medical assessment. Lieutenant Fosnot began a formal investigation into the alleged sexual assault on the same day as the allegation was reported. Fosnot's investigation included interviews of Millbrook, Walls, and CO Frederick. (Doc. 154, at 10-11, 13, 54, 61-62).

10. Also as part of Fosnot's investigation, PA Hemphill conducted a medical assessment of Millbrook on May 13, 2011. Hemphill found that there were no signs of bruising or injury to Millbrook's penis. (Doc. 154, at 53-57).

11. Lieutenant Fosnot's investigation ultimately concluded that Millbrook's claim of sexual assault was not sustained. (Doc. 154, at 64).

12. In finding that Paramedic Walls did not lower Millbrook's boxer shorts, then grab his penis and pull on it, the Court acknowledges that the parties' accounts of what transpired in the third floor shower area differ significantly. At trial, the Court heard the following testimony:

    a. Millbrook testified that while he was cuffed and restrained by CO Frederick, Paramedic Walls removed his boxer shorts, grabbed his penis, and pulled down on it. This assault allegedly lasted for ten-to-fifteen seconds, as Walls purportedly only released his grip after Millbrook asked him "why are you pulling on my penis like that, man[?]" (Doc. 154, at 9, 16-17; Doc. 160, ¶ 5).

    b. Millbrook asserted that Paramedic Walls and CO Frederick left him in the third floor shower area after the sexual assault. A patrolling CO purportedly came

4

across Millbrook and escorted him back to his cell, but did not report the assault at that time. (Doc. 154, at 9-10).

c. Millbrook claimed that he noticed blood in his urine for a week after the assault and that he was in pain for over a month. (Doc. 154, at 13-14).

d. Paramedic Walls and CO Frederick both testified that they lacked independent recollections of the medical assessment and alleged assault, as they instead each relied on their notes and reports from the medical assessment and Lieutenant Fosnot's subsequent investigation. Based on those notes, Walls claimed that he removed Millbrook's outer shorts as part of the routine medical assessment but never removed Millbrook's boxer shorts or touched his genitals, and that Millbrook never complained of any injuries. Frederick likewise testified on the basis of an affidavit prepared by Fosnot that he signed during the investigation, which stated that Frederick did not see anything inappropriate during Walls' medical assessment of Millbrook on May 12, 2011. (Doc. 154, at 27, 32-36, 44-48; Doc. 160, ¶¶ 7, 9-10).

e. PA Hemphill testified that he also lacked an independent recollection of his medical assessment of Millbrook on May 13, 2011 as part of the Fosnot investigation. Relying on his notes from that medical assessment, Hemphill stated that he found no evidence of genital bruising or injury to support Millbrook's complaints of genital pain. Hemphill further testified that because the penis is a very vascular area, it generally bruises easily. At trial, Millbrook did not dispute any aspect of Hemphill's testimony. (Doc. 154, at 53-57).

13. As the finder of fact in this bench trial, the Court is "required to . . . make subjective credibility determinations about the witnesses who testified . . . ." *Bayer AG v. Housey Pharm., Inc.*, 386 F. Supp. 2d 578, 580 (D. Del. 2005), *aff'd*, 189 F. App'x 969 (Fed. Cir. 2006) (not precedential); *see also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). The Court finds that several issues weigh on the credibility of witnesses' statements at trial. Specifically, the Court notes the following:

   a. Counsel for the Government avers that Millbrook has a long history of bringing sexual assault allegations against other BOP staff members and inmates, as counsel argued that these accusations were a way for Millbrook to potentially manipulate his cell assignments. The Court finds the Government's theory to be a credible explanation for why Millbrook would have a motive to falsely allege that he was sexually assaulted by Paramedic Walls, particularly in light of the fact that Millbrook admitted at trial that he often refuses new cellmates.[3] (Doc. 154, at 17-21).

---

[3] At trial, the Government also attempted to impeach Millbrook's credibility by pointing to inconsistencies regarding the timing of the filing of his complaint. Namely, the Government points out that Millbrook alleged that he handed his complaint to USP Lewisburg staff to be mailed on February 21, 2012, but that this would have been impossible because the complaint was not signed and dated by Millbrook until February 28, 2012. Although Millbrook admitted that he "might have misconstrued [the] date," his complaint would have been deemed timely filed under either date. Given the lack of evidence that Millbrook intentionally tried to deceive

*(footnote continued on next page)*

b. The Court finds the testimony of PA Hemphill and Lieutenant Fosnot to be particularly convincing. Specifically, it is undisputed that Fosnot initiated an investigation immediately after Millbrook's allegations were reported to him, resulting in Hemphill conducting a medical assessment the day after the alleged assault occurred. Their prompt response belies any insinuation that there may have been a widespread cover-up of the sexual assault. Moreover, Millbrook does not dispute Hemphill's conclusions from the medical assessment that there were no signs of bruising or injury to Millbrook's genital area. The Court also attributes significant weight to Hemphill's explanation that the penis bruises easily because it is a very vascular area. Partially based on Hemphill's findings, Fosnot concluded that the sexual assault charge was not sustained. The Court finds that the testimony from Hemphill and Fosnot considerably undermines Millbrook's theory of the case. (Doc. 154, at 53-57, 64, 68).

c. The Court additionally finds credible the statements by all four Government witnesses that they would not have risked jeopardizing their careers with the BOP by either engaging in or covering up a sexual assault. (Doc. 154, at 34, 47, 57, 64-65).

d. Counsel for Millbrook points out that none of the Government's witnesses have independent recollections of the alleged sexual assault or of the investigation that followed, and argues that Millbrook's testimony should receive greater

the Court, the Court does not find this discrepancy to be probative of Millbrook's propensity for truthfulness, or lack thereof. (Doc. 75, at 11; Doc. 88, at 11-13 & n.10; Doc. 154, at 21-24).

weight because Millbrook was the only witness who claimed to have a present recollection of the incident. The Court finds that the Government witnesses' reliance on their notes and reports as opposed to independent recollections does not render their testimony significantly less credible. Given that this trial was held over five years after the events at issue, it is not unreasonable that the Government's witnesses lacked independent recollections of the alleged sexual assault and subsequent investigation. (Doc. 154, at 27, 31-32, 35, 48, 54, 57-58, 60, 66; Doc. 160, ¶ 10).

e. Counsel for Millbrook also notes a discrepancy in the materials that CO Frederick relied on for his testimony. On the day of the alleged sexual assault, Frederick submitted a memorandum indicating that he took inmate Pettus to the first floor shower area for a medical assessment after responding to the cell fight, but the memorandum made no reference to Frederick's presence in the third floor shower area for Millbrook's medical assessment. During the subsequent investigation into the alleged sexual assault, Frederick signed an affidavit attesting that he was present for Millbrook's medical assessment in the third floor shower area but omitting any mention of Frederick's presence in the first floor shower area with Pettus. All parties agreed at trial that Frederick was present in the third floor shower area for Millbrook's medical assessment, but the Government never explained why Frederick omitted this information from his initial report. Accordingly, the Court finds that the weight afforded to the documents that Frederick relied on, and thus Frederick's testimony in general,

must be discounted. (Defendant Ex. 2, at 13; Defendant Ex. 5, at 9-10; Doc. 154, at 49-51; Doc. 160, ¶ 11).

    f. At trial, counsel for Millbrook also elicited testimony that there was no available video evidence of the alleged assault, and inferred that Paramedic Walls and CO Frederick may have taken Millbrook to the third floor shower area specifically because it was an isolated location. Walls conceded that he sometimes takes inmates to the medical area for medical assessments as opposed to the showers, particularly where injury is readily apparent. However, the fact that USP Lewisburg staff also took inmate Pettus to the showers for his medical assessment—albeit to the first floor shower area—undermines any accusation that there is something inherently suspicious about where Walls and Frederick chose to conduct the medical assessment of Millbrook. The Court therefore does not find that the lack of video evidence or location of Millbrook's medical assessment significantly undermines the Government's narrative. (Doc. 154, at 40-41, 45).

14. On balance, the Court finds that the Government's witnesses provided more credible testimony than Millbrook. Even casting aside CO Frederick's testimony on account of the unexplained discrepancy in his notes, the remaining undisputed evidence and testimony clearly supports the Government's version of events. Significantly, Millbrook does not dispute PA Hemphill's finding that there were no signs of bruising or injury to Millbrook's genitals, and Millbrook failed to produce any evidence aside from his own testimony to support his claim that he sustained injury to that area at the hands of Paramedic Walls. The Court therefore finds that Paramedic Walls did

not lower Millbrook's boxer shorts then grab and pull down on his penis on May 12, 2011.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the instant action under the FTCA. 28 U.S.C. §§ 1331, 1346.

2. Venue is proper in this Court, as the events giving rise to Millbrook's claim occurred within the Middle District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

3. The FTCA provides that the Government shall be liable to the same extent as a private individual "for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1).

4. Paramedic Walls and CO Frederick are "employees of the Government" as defined by the FTCA. 28 U.S.C. §§ 1346, 2671.

5. A federal court adjudicating a case under the FTCA must apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

6. Accordingly, because the acts or omissions at issue here occurred within the Commonwealth of Pennsylvania, Pennsylvania law applies.

7. In order to establish liability in tort for negligence, Pennsylvania law requires the following four elements to be satisfied: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006).

8. "Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'" *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016) (quoting *C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 340 (Pa. 2008)). However, "[t]he incidental and necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but are privileged contacts." *Picariello v. Fenton*, 491 F. Supp. 1026, 1038 (M.D. Pa. 1980) (citing Restatement (Second) of Torts s 132, Comment b (1965)).

9. Here, the Court finds that Millbrook has failed to establish by a preponderance of the evidence that CO Frederick breached a duty of care by failing to respond to the alleged sexual assault at the hands of Paramedic Walls because there is insufficient evidence that the sexual assault ever occurred, and because there is insufficient evidence that Millbrook suffered actual injury to his penis.

10. The Court also finds that Millbrook has failed to establish by a preponderance of the evidence that Paramedic Walls touched Millbrook in a harmful or offensive manner that exceeded the bounds of the "privileged contacts" Walls was entitled to make as a BOP employee performing the routine functions of his job. The Court concludes that any physical contact Walls made with Millbrook on May 12, 2011 was limited to the incidental and necessary touching that was required for Walls to complete his medical assessment of Millbrook.

11. Accordingly, the Court finds that Millbrook has failed to prove by a preponderance of the evidence that CO Frederick acted negligently or that Paramedic Walls committed the intentional tort of battery.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of the Government and against Plaintiff Kim Lee Millbrook.

An appropriate Order shall follow.

BY THE COURT:

Dated: May 4, 2017

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**